1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

WILLIAM KANONGATA'A

11                          Appellant/Plaintiff,

12          v.

13   WASHINGTON INTERSCHOLASTIC
     ACTIVITIES ASSOCIATION; and the
14   BELLEVUE SCHOOL DISTRICT,

15                          Respondents/Defendants.

CASE NO. C05-1956C

ORDER

16

17          This matter comes before the Court on (1) the Motion for Summary Judgment filed by Defendant

Bellevue School District ("BSD") (Dkt. No. 14), Plaintiff's Opposition thereto (Dkt. No. 27), and BSD's

18   Reply (Dkt. No. 32); and (2) the Motion for Summary Judgment filed by Defendant Washington

19   Interscholastic Activities Association ("WIAA") (Dkt. No. 24), Plaintiff's Opposition thereto (Dkt. No.

20   36), and WIAA's Reply (Dkt. Nos. 37 and 42). Having considered the papers submitted by the parties

21   and finding oral argument unnecessary, the Court finds and rules as follows.

22   I.     BACKGROUND

23          Plaintiff William Kanongata'a's present action is an appeal from the administrative decision of

24   Defendant WIAA denying him eligibility to participate in interscholastic activities, including football,

25

26   ORDER – 1

brought pursuant to state law (Revised Code of Washington § 28A.645.010), as well as an action for damages and declaratory relief against both Defendant WIAA and Defendant BSD for alleged violations of federal law.  Plaintiff's federal claims include allegations that both Defendants violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., and deprived him of federal constitutional rights, as actionable under 42 U.S.C. § 1983.  (Pl.'s Notice of Appeal and Complaint (Dkt. No. 1).)  As to the ADA, Plaintiff alleges that athletic participation was withheld as a result of his Attention Deficit Hyperactivity Disorder ("ADHD") and associated learning disability and that he was denied a reasonable accommodation that would have permitted him to be eligible to participate in athletics.  (*Id.* ¶ 4.2.)  As to the civil rights claims, Plaintiff alleges that he has a protected property interest in high school interscholastic athletic participation and that both Defendants deprived him of this alleged constitutional right without being afforded due process.  (*Id.* ¶¶ 4.1, 4.3.)  Plaintiff further alleges an equal protection violation by WIAA.  (*Id.* ¶ 4.1.4.)  Plaintiff originally filed suit in King County Superior Court on October 25, 2005.  Defendant BSD removed the action to this Court on November 21, 2005.  (Def. BSD's Notice of Removal (Dkt. No. 1).)

### A.  MOTION TO STRIKE

Plaintiff has moved to strike certain documentary and declaratory evidence submitted by BSD. The Court has duly considered the motion and notes that it will consider evidence only for admissible purposes in ruling on the instant motion.

### B.  FACTS

The Washington Interscholastic Activities Association is a "voluntary nonprofit entity," to which school district boards in the State of Washington may delegate "control, supervision and regulation" of any "interschool athletic activities and extracurricular activities of an athletic nature."  WASH. REV. CODE § 28A.600.200 (as amended).[1]  The Bellevue School District includes several of the approximately 800

---

[1] This section was amended  recently by the Washington Legislature (59th Legislature, 2006 Regular Session), *see* 2006 Wash. Legis. Serv. Ch. 263, Sec. 904 (S.S.H.B. 3098) (West).  However the

ORDER – 2

junior and senior high schools in Washington that delegate such authority, as allowed by statute.  BSD has four high schools with football teams.  If a student attends a school that has no team, that student may elect to play sports at one of the other schools.  Plaintiff has attended both Bellevue High School, which has a football team, and Robinswood High School, a BSD "alternative" high school that does not have a football team.  While a student at both schools, Plaintiff sought to play for Bellevue High School's football team.

Plaintiff currently is a student at Robinswood High School in Bellevue, Washington.  He is Tongan, has been expelled from his family home, and has both ADHD and a learning disability.  He is 19 years old and will turn 20 in September 2006.  He will be starting his sixth year of high school in the fall of 2006 and seeks, in part, a determination that he should be able to participate in athletics at that time.

Plaintiff began high school in 2001, attending John F. Kennedy High School in Burien, Washington for ninth grade (2001–02) and part of tenth grade (2002–03).  While at Kennedy, Plaintiff played on the junior varsity football and basketball teams in 2001–02 and on the junior varsity football team in 2002–03.  At Kennedy, Plaintiff's first-semester Grade Point Average ("GPA")[2] was 2.42 in ninth grade.

Various personal, academic, and family problems persisted throughout Plaintiff's high school years, beginning with his time at Kennedy.  In the spring of ninth grade, Plaintiff's GPA fell to a 1.5 for that semester.  On August 3, 2002, in the summer between his ninth-grade and sophomore years, Plaintiff's older brother was tragically killed in a car accident.   Before he turned 16 in the fall of 2002 or obtained a drivers license, Plaintiff apparently was driving a car that hit a school bus.  Plaintiff's grades continued to decline, resulting in a 0.6 GPA for the first semester of his sophomore year.  In the spring of his sophomore year, Plaintiff was expelled from Kennedy.  According to the WIAA findings dated

language quoted here was not changed by the amendment.

[2]  All references to Plaintiff's GPA herein are based on Plaintiff's cumulative Washington State High School Transcript (Def. BSD's Mot., Blakney Decl. Ex. 3).

ORDER – 3

September 26, 2005, this expulsion was due to fighting and truancy, as well as drinking at a school dance. The expulsion occurred in January 2003. At that time, Plaintiff was also expelled from his family home, due to family conflicts. Plaintiff did not attend any school for the remainder of the school year following his tenth-grade expulsion from Kennedy. Thereafter, he moved to Utah to live with an uncle, at the age of 16. The Court notes, as do Defendants, that Plaintiff's argument and declarations conflict to some degree with the evidence regarding this chronology and the surrounding facts.[3] These discrepancies notwithstanding, it is clear that Plaintiff had significant personal and familial upheaval during his first two years of high school and beyond. Given the chaos in Plaintiff's life, the confusion is unsurprising.

Plaintiff's next enrollment was at the beginning of the 2003–04 school year, which should have been his junior year, at Olympus High School in Utah. Plaintiff stayed at Olympus only a short time. After the fall semester of what should have been his junior year, he dropped out of school—on January 30, 2004. During his one full semester at Olympus, Plaintiff's GPA was 1.63. He returned to Washington at the encouragement of his godfather Glen Walker. Apparently unable to return to his

---

[3] For instance, Social Security records indicate August 3, 2002—which was during the summer before Plaintiff's sophomore year—as Tuituiohu Kanongata'a's date of death. (Def. BSD's Reply, Blakney Supp. Decl. Ex. 5.) Nevertheless, both Plaintiff and his caretaker and godfather Glen Walker have submitted declarations that place the date of death sometime *after* Plaintiff was expelled from school and from his family home during his sophomore year. (Pl.'s Opp'n to BSD, Kanongata'a Decl. ¶ 3 (stating that after he was kicked out of the house, he went to live with his brother, who, after a few weeks, was killed in a car accident); *id.*, Walker Decl. ¶ 3 (same).) Plaintiff's opposition brief repeats this error. (Pl.'s Opp'n to BSD 2.)

Another contradiction involves Plaintiff's declaration that he was 15 when he moved to Utah (*id.*, Kanongata'a Decl. ¶ 3), notwithstanding the fact that he had turned 16 by September of his sophomore year and did not move to Utah until after his second-semester expulsion from Kennedy during his sophomore year. Again, Plaintiff's opposition brief claims that he was 15. (Pl.'s Opp'n to BSD 3.)

As to the family conflicts, two reasons are given. Plaintiff and his mother testified in 2004 at eligibility hearings (which are not at issue in this lawsuit) that Plaintiff and his father did not see "eye to eye" and that his father did not approve of Plaintiff's behavior. (*See* Def. WIAA's Reply 3; Def. BSD's Mot. 3 n.1.) However in the declarations on the instant motions, Plaintiff and Mr. Walker both declare that Plaintiff intervened after his father physically abused his mother. (*See* Pl.'s Opp'n to BSD, Kanongata'a Decl. ¶ 3; *id.* Walker Decl. ¶ 3.) Further, in 2005, Plaintiff testified about domestic violence in the home as part of the administrative appeal process at issue here. (*See* Pl.'s Opp'n to WIAA, Degan Decl. Ex. C (WIAA District 2 Eligibility Hearing, September 1, 2005) 18:16–25.)

ORDER – 4

1    family's home, he moved in with Mr. Walker, who was then living in an apartment in the home of his

2    friend Charles Amundson, located within the Bellevue School District.  Mr. Walker enrolled Plaintiff at

3    Bellevue High School during the spring semester of the 2003–04 school year, but in March 2004, Plaintiff

4    was suspended from Bellevue High School for gambling.  (Pl.'s Opp'n to BSD, Degan Decl. Ex. K.)

5    According to Plaintiff, he was the only student so disciplined.  (Pl.'s Opp'n to BSD 4 n.2.)  Plaintiff was

6    then enrolled at Robinswood High School, an alternative school in the Bellevue School District.  Plaintiff

7    stayed at Robinswood for the remainder of the 2003–04 school year and earned all Bs[4] and a semester

8    GPA of 3.0, his best grades to date.

9        Mr. Walker applied for guardianship of Plaintiff in September 2004.  While there is no evidence

10   that such guardianship ever was legally granted, Plaintiff's parents gave Mr. Walker power of attorney

11   over Plaintiff on September 16, 2004.  (*See* Pl.'s Opp'n to BSD, Walker Decl. ¶ 2, Ex. A.)  Plaintiff

12   returned to Bellevue High School for the 2004–05 school year—which should have been his senior year.

13       At the beginning of the 2004–05 school year, Plaintiff's series of football eligibility battles began.

14   At that time, Plaintiff petitioned for a hardship exemption that would allow him to play varsity sports

15   despite his transfer into the district following his time in Utah.  This request was precipitated by WIAA

16   rules preventing transfer students who did not transfer into a new school district with their parents from

17   participating in varsity sports for a full year after their transfer.  (Def. BSD's Mot., Blakney Decl. Ex. 1

18   (WIAA 2005–2006 Official Handbook) §§ 18.9.0, 18.10.0 [hereinafter "WIAA Handbook"].)  Students

19   who are prevented from varsity participation by this rule may still participate in junior varsity sports,

20   however.  (*Id.* § 18.11.0.)  Plaintiff's petition was denied on September 30, 2004, with WIAA

21   concluding that Plaintiff was "ineligible to participate at the varsity level in football for the 2004–05

22   school year."  (Def. BSD's Mot., Blakney Decl. Ex. 15 (WIAA Eligibility Determination, September 30,

23   2004).)  In light of this decision, Plaintiff participated in junior varsity football at Bellevue High School in

24

25       [4]  Plaintiff originally was enrolled in four classes and appears to have withdrawn from one of
     them, leaving him with three credit-earning classes, all three of which resulted in grades of B.

26   ORDER – 5

1    the fall of 2004.

2         During the fall of 2004, Plaintiff earned no academic credits.  He was allegedly caught cheating in

3    November 2004.  According to Mr. Walker, in the fall of 2004, Mr. Walker made "continued" requests

4    of Bellevue High School, seeking academic assistance for Plaintiff, which were met with "continued"

5    refusals for such help.  (Pl.'s Opp'n to BSD, Walker Decl. ¶¶ 7, 8.)  Apparently frustrated by the lack of

6    response from the school, in December 2004, Mr. Walker sought medical advice at Group Health

7    regarding Plaintiff's academic problems.  Dr. Stephen Crippen diagnosed Plaintiff with ADHD.  (*See* Pl.'s

8    Opp'n to BSD, Walker Decl. Ex. B (Evaluation and Diagnosis).)  The diagnostic forms were forwarded

9    to Bellevue High School for a determination regarding an educational program for Plaintiff.  According

10   to the school, teachers could not complete diagnostic referral forms because of Plaintiff's poor

11   attendance.  (Def. BSD's Mot., Bacigalupi Decl. ¶ 7.)  Nevertheless, on May, 19, 2005, Bellevue High

12   School determined that Plaintiff has a specific learning disability that qualifies him for an Individualized

13   Education Program (IEP).  (Pl.'s Opp'n to BSD, Degan Decl. Ex. B (learning disability assessment

14   materials).)

15        On January 25, 2005, Plaintiff was suspended from Bellevue High School for truancy and failing

16   grades, effective January 28, 2005.  Mr. Walker was notified by letter of Plaintiff's withdrawal from

17   enrollment.  (Pl.'s Opp'n to BSD, Walker Decl. Ex. C (letter).)  Bellevue High School allegedly took this

18   action after three meetings had been set up with Mr. Walker, who attended none of them.  (*Id.*; Def.

19   BSD's Mot., Bacigalupi Decl. ¶ 5.)  Mr. Walker offers no explanation of his nonattendance at the

20   meetings referenced in the letter, and instead says that he had repeatedly asked for help.  (Pl.'s Opp'n to

21   BSD, Walker Decl. ¶ 10.)  According to the school, as Plaintiff was being withdrawn, school officials

22   suspected that Plaintiff did not live in the district, and subsequently sent a letter, dated March 1, 2005, to

23   Mr. Walker and Plaintiff's parents indicating that his withdrawal from Bellevue High School on January

24   28, 2005 actually was due to nonresidence in the district (as opposed to the previously-furnished reason

25   of "truancy and failing grades").  Pl.'s Opp'n to BSD, Walker Decl. Ex. E (letter).)

26   ORDER – 6

1    Before this letter arrived, however, Mr. Walker had filed a due process hearing request with the

2    Office of the Superintendent of Public Instruction, alleging that Bellevue High School and BSD had

3    ignored Mr. Walker's request for learning disability testing following the ADHD diagnosis.  Plaintiff was

4    then re-enrolled at Bellevue High School on March 7, 2005.  According to BSD, this decision followed a

5    change in address, with Plaintiff again residing within the district limits.  However, Mr. Walker denies

6    that Plaintiff lived anywhere but with him, in the district, for the entire time period at issue.  (Pl.'s Opp'n

7    to BSD, Walker Decl. ¶¶ 12, 13.)  The school's disability assessment began in the spring semester.

8    During the period of the assessment, Plaintiff allegedly cheated a second time, in April 2005, receiving a

9    zero for a test as a consequence.

10    In May 2005, Bellevue High School completed its evaluation, finding that Plaintiff did qualify for

11    special education services.  He passed five of his six classes, but failed the sixth because he allegedly was

12    caught cheating a third time, in June 2005.  Apparently, this third violation resulted in the school's

13    determination that Plaintiff would be ineligible to participate in the school's extracurricular activities for

14    one full year.  The school's policy states this as one consequence of a third "cheating" violation.  (Def.

15    BSD's Mot., Blakney Decl. Ex. 9.)  Plaintiff's GPA for the second semester of the 2004–05 school year

16    was 2.14.  According to Mr. Walker, Plaintiff's attitude and progress were much improved by this point.

17    In August 2005, before the 2005–06 school year began, Plaintiff's attorney met with the Principal

18    of Bellevue High School to discuss Plaintiff's eligibility to play football for Bellevue High School even

19    though he would be attending Robinswood High School that year.  One point of discussion was

20    Plaintiff's years of play.  The prior year, WIAA's eligibility determination regarding the transfer rule

21    included a conclusion that "due to his four years of participation, [Plaintiff] will not be eligible for a fifth

22    year of interscholastic athletic participation should he enroll for the 2005–06 school year."  (Def. BSD's

23    Mot., Blakney Decl. Ex. 15 (WIAA Eligibility Determination, September 30, 2004).)  WIAA had

24    calculated Plaintiff's four years to include football at Kennedy in 2001–02 and 2002–03, football in Utah

25

26    ORDER – 7

1   in 2003–04,[5] and football at Bellevue High School in 2004–05.  Apparently contemplating WIAA rules

2   that limit eligibility to four consecutive years of play after entering or being eligible to enter the ninth

3   grade (*see* WIAA Handbook § 18.14.0) as it ruled on a separate matter (the transfer rule), WIAA made

4   this additional conclusion in 2004 about the four-year season limitation rule and its eventual effect on

5   Plaintiff.  However, as with the transfer rule, a hardship waiver may preclude enforcement of the four-

6   year rule.  (*Id.* § 18.22.0.)  As explained *infra*, Plaintiff sought such a waiver in 2005.

7          In addition to these WIAA eligibility issues, Plaintiff was informed of eligibility issues at Bellevue

8   High School by late summer 2005.  These included Plaintiff's three alleged cheating violations in the

9   2004–05 school year and his 1.63 cumulative GPA as he would be entering the 2005–06 school year.

10  BSD and Bellevue High School require a 2.0 GPA for participation in sports.  (Def. BSD's Mot.,

11  Bacigalupi Decl. ¶ 10.)

12         WIAA maintains that the Bellevue High School and BSD rules about grades and academic

13  honesty prevented Plaintiff's eligibility notwithstanding any impact of WIAA rules.  (Def. WIAA's Mot.

14  8–9.)  Conversely, BSD contends that, despite its independent reasons for Plaintiff's ineligibility to play,

15  the *WIAA rules* regarding years of play formed the basis for Plaintiff's ineligibility.  (Def. BSD's Mot.

16  8–9.)  BSD also emphasizes that Plaintiff was given information about appealing the academic dishonesty

17  violations but did not do so.  (Def. BSD's Mot., Bacigalupi Decl. ¶ 11.)  As Plaintiff emphasizes,

18  however, his cumulative GPA was well below 2.0 during the 2004–05 school year yet *neither* WIAA nor

19  BSD used it as a basis to bar him from athletic participation for the 2004 season.  (Pl.'s Opp'n to WIAA

20  12 n.5.)

21         Plaintiff's 2005 WIAA eligibility hearing resulted in a determination that he could not play

22  football, either varsity or junior varsity.  On September 26, 2005, WIAA reviewed the findings and

23

24         [5]  Whether Plaintiff played football in Utah is the subject of some debate now, as it has been
    throughout the various stages of eligibility determinations and appeals.  *See infra* section II.C for a
25  discussion on this point.

26  ORDER – 8

1  conclusions of the Eligibility Committee and recommendation of the hearing officer and found that

2  regardless of his actual participation in football while in Utah in 2003–04, it was his *opportunity* to play

3  that year that would count against him.  (Def. BSD's Mot., Blakney Decl. Ex. 2 (WIAA Eligibility

4  Determination, September 26, 2005) ¶¶ 8, 9.)  WIAA concluded that Plaintiff's own behavior led to his

5  suspension from Kennedy (and therefore his need to move to Utah) and any ensuing ineligibility to play in

6  Utah.  It also found that a hardship exemption based on family circumstances or his ADHD and learning

7  disability was unwarranted.  WIAA therefore denied the petition.  It is this *2005* WIAA eligibility

8  determination that Plaintiff now appeals as part of the instant suit.  In addition to the federal claims

9  against both Defendants discussed *supra*, Plaintiff alleges that BSD improperly injected itself into the

10  WIAA proceedings.

11      Plaintiff's 2005–06 school year has resulted in no credits thus far and failing grades.  Plaintiff has

12  over 50 unexcused absences in each of his four classes.  (Def. BSD's Mot., Hasslinger Decl. Exs. 1, 2.)

13  He was unable to graduate this year and will enter his sixth year of high school in the fall of 2006.  He

14  seeks, in part, a determination by this Court that he may play football for the 2006–07 season.

15  **II.   ANALYSIS**

16      **A.   JURISDICTION**

17      Jurisdiction in this Court is proper on Plaintiff's state and federal claims.   As to Plaintiff's causes

18  of action arising under state law, 28 U.S.C. § 1367 provides for exercise of the jurisdiction of the federal

19  courts over state law claims that arise from the same set of facts as the federal claims.  Because this Court

20  has jurisdiction to hear Plaintiff's federal ADA and § 1983 claims, it may exercise its discretion to hear

21  Plaintiff's state-law claims, even if all federal claims eventually are dismissed on the merits.  *Herman*

22  *Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 805–06 (9th Cir. 2001).

23      **B.   STANDARDS OF REVIEW**

24      Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions, and

25  provides in relevant part, that "[t]he judgment sought shall be rendered forthwith if the pleadings,

26  ORDER – 9

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  A genuine issue of material fact exists where there is sufficient evidence for a reasonable fact-finder to find for the non-moving party. *Anderson*, 477 U.S. at 248.  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.  The moving party bears the burden of showing that there is no evidence which supports an element essential to the non-movant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the movant has met this burden, the non-moving party then must show that there is in fact a genuine issue for trial. *Anderson*, 477 U.S. at 250.

Because the instant motions are for summary judgment, the foregoing standard applies to both WIAA's motion and BSD's motion.  However, WIAA's motion involves an appeal of an administrative decision.  Administrative appeals are governed by additional standards of review.  The administrative appeal at issue here is brought pursuant to Revised Code of Washington section 28A.645.010.[6]  By statute, such appeals "shall be heard de novo by the superior court." WASH. REV. CODE 28A.645.030. However, Washington courts have determined that, despite this seemingly clear language, *de novo* review of administrative action pursuant to these sections is not automatic.  Instead, the question is whether the

---

[6] Revised Code of Washington section 28A.600.200 provides that each school district board of directors may delegate control supervision and regulation of extracurricular activities of an athletic nature for students of the district to WIAA, subject to (among others) the condition that decisions regarding eligibility "*shall be considered a decision of the school district conducting the activity* in which the student seeks to participate or was participating *and may be appealed pursuant to RCW 28A.645.010 through 28A.645.030.*" WASH. REV. CODE § 28A.600.200(3) (as amended) (emphasis added). Subsection 3 was previously subsection 5; its text was not affected by the recent amendments.

ORDER – 10

action appealed from is "quasi-judicial" or, alternatively, "nonjudicial."  The Supreme Court of

Washington has found that

> despite the clear language of RCW 28A.88.015, a de novo review of an administrative agency's decision is only permissible when the agency acts in a quasi-judicial manner. Review under RCW 28A.88.010 is limited to whether the agency acted arbitrarily, capriciously, or contrary to law *in cases in which the agency acted in its administrative function*.

*Haynes v. Seattle School District No. 1*, 758 P.2d 7, 9 (Wash. 1988) (quoting *Yaw v. Walla Walla School District No. 140*, 722 P.2d 803, 806 (Wash. 1986)) (emphasis added by the *Haynes* court).  Thus, if WIAA was acting in a quasi-judicial manner, *de novo* review of its action is appropriate.  However, if it was performing an administrative function, the standard of review is whether its action was "arbitrary, capricious, or contrary to law."  WIAA argues that the standard to be applied should inquire into whether its actions were arbitrary and capricious because it was performing an administrative function when it denied Plaintiff's football eligibility.  Plaintiff, however, contends that the proper standard is *de novo* review of WIAA's administrative decision because WIAA was acting in a quasi-judicial capacity when it determined his eligibility.

In determining the proper standard to apply to Plaintiff's claims against Defendant WIAA, the Court begins by noting that Plaintiff's claims against Defendant WIAA cannot be cast simply as "an administrative appeal."  First, Plaintiff asserts a claim that the rules regarding hardship exemptions—or "waivers"—from WIAA's four-year limit on eligibility violate the ADA (1) as written and (2) as applied to him.  Specifically, Plaintiff argues that WIAA's hardship waiver provision does not properly contemplate students with recognized disabilities and that application of such a rule to him was a violation of the ADA.  Second, Plaintiff's § 1983 claim asserts that WIAA's application of these rules and consideration of his particular case violated Plaintiff's constitutional right to equal protection and deprived him of a property right without affording him due process.  Neither of these two categories of claims are properly characterized as fundamental to WIAA's eligibility determination below.  The ADA and § 1983 claims are assertions of federal rights that were only cursorily addressed in the administrative

ORDER – 11

proceedings.  As such, they should be considered somewhat independently from the statutory

administrative appeal.

Some of Plaintiff's claims, however, do squarely constitute an administrative appeal.  Specifically,

Plaintiff asserts a state-law claim that WIAA misapplied its own rules by finding that Plaintiff had already

"used up" his four years of eligibility.  If Plaintiff is correct in this regard, no "waiver" of the four-year

restriction would be required in the first instance.  Further, even if WIAA's calculation cannot be

disturbed, Plaintiff additionally challenges WIAA's application of its hardship exception rule to him when

it evaluated his family circumstances and personal barriers.  Plaintiff argues that, even if his four years of

eligibility were used up, his individual circumstances justified a waiver of the season limitation rule.  To

determine which standard of review to apply when evaluating Plaintiff's appeal of these WIAA's findings,

the Court must evaluate whether WIAA's action was administrative or quasi-judicial in nature and further

take into consideration the federal statutory and constitutional claims that overlay the administrative

appeal.

The distinction between "administrative" and "quasi-judicial" action involves application of

multiple tests.  The Supreme Court of Washington described these tests in *Francisco v. Board of Dirs. of

Bellevue Public Schs., Dist. No. 405*, 537 P.2d 789, 791–92 (Wash. 1975).  The first test is "whether the

court could have been charged in the first instance with the responsibility of making the decisions the

administrative body must make."  *Id.* at 792.  The second test is "whether the function the administrative

agency performs is one that courts historically have been accustomed to performing and had performed

prior to the creation of the administrative body."  *Id.*  The third test defines a "judicial function" as one

that

> "investigates, declares, and enforces liabilities as they stand on present or past facts and
> under laws supposed already to exist.  That is its purpose and end.  Legislation, on the
> other hand, looks to the future and changes existing conditions by making a new rule, to
> be applied thereafter to all or some part of those subject to its power."

*Id.* (quoting *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226 (1908) (Holmes, J.)).  A fourth test

ORDER – 12

relates to the second: "'that which resembles what courts customarily do is judicial, and that which has no such resemblance is nonjudicial.'"  *Id.* (quoting *Okanogan County Sch. Dist. v. Andrews*, 363 P.2d 129, 131 (Wash. 1961)).

Applying the *Francisco* tests to the WIAA decisions appealed here results in a mixed outcome. The first *Francisco* test—whether the Court could have been charged in the first instance with the task that the administrative body performed—suggests that WIAA's eligibility determination was nonjudicial. Washington law specifically sets forth that WIAA will make initial decisions when it has the delegated authority to do so, and only after this process may the matter be appealed to the superior court.  *See* WASH. REV. CODE § 28A.600.200(3) (as amended); *supra* note 6.  The second *Francisco* test—whether courts historically have made athletic eligibility determinations—also suggests that WIAA's action was of a nonjudicial nature.  The task of eligibility determinations is undertaken by WIAA as a result of its delegated power from the school districts.  Such is a power historically exercised by school districts, not state or federal courts.  Cast as a variation of the second test, the fourth test—whether the action taken "resembles" the work of courts—therefore also suggests that WIAA eligibility determinations are nonjudicial.  Further, even though seemingly quasi-judicial eligibility determinations are made in individual instances, the role of WIAA is primarily a rulemaking and regulatory one.

Nevertheless, the third *Francisco* test—considering the actual activity carried out by the administrative body—suggests that WIAA *does* act in a quasi-judicial capacity when it makes eligibility determinations.  Specifically, WIAA considers individual facts and circumstances and applies those facts to its *existing* eligibility rules and regulations.  It hears testimony, declares rights, investigates, creates a record, and adjudicates disputes between WIAA and students seeking a particular result in an individual case.  These are quasi-judicial functions that contrast markedly to the legislative or rulemaking functions that WIAA also performs.  Thus, one of the three *Francisco* tests does support *de novo* review.  This mixed outcome, while favoring application of the "arbitrary, capricious, or contrary to law" standard in this case, nevertheless calls for consideration of additional factors.

ORDER – 13

While Washington courts have not addressed the specific question, authority from other states indicates that *athletic eligibility* determinations—*i.e.*, regulatory agencies' application of their own athletic eligibility rules to individual high school students—are typically reviewed for abuse of discretion, rather than *de novo*. *See, e.g., Clay v. Arizona Interscholastic Ass'n, Inc.*, 779 P.2d 349 (Ariz. 1989) (reviewing application of rule under arbitrary and capricious standard); *Indiana High Sch. Athletic Ass'n, Inc. v. Durham*, 748 N.E.2d 404 (Ind. App. 2001) (reviewing rule itself as well as its application under arbitrary and capricious standard); *Gerard v. Section III of New York State Public High Sch. Athletic Ass'n*, 210 A.D.2d 938 (N.Y. App. Div. 1994) (reviewing application of rule under arbitrary and capricious standard); *Mozingo v. Oklahoma Secondary Sch. Activities Ass'n*, 575 P.2d 1379 (Okla. App. 1978) (reviewing rule itself as well as its application under arbitrary and capricious standard). Combined with this general trend—that athletic eligibility rules as well as their application to individual students should be reviewed under the arbitrary and capricious standard—is the requirement that federal statutory rights and constitutional questions receive greater scrutiny even when part of a review process that otherwise might mandate the deference of the "arbitrary and capricious" standard. *See Bingham v. Oregon Sch. Activities Ass'n*, 37 F. Supp. 2d 1189 (D. Or. 1999) (fully reviewing rule itself as well as its application for compliance with the ADA), *vacated in part on other grounds*, *Bingham v. Ediger*, 20 Fed. Appx. 720 (9th Cir. 2001) (unpublished disposition); *Fusato v. Washington Interscholastic Activities Ass'n*, 970 P.2d 774 (Wash. App. 1999) (applying *de novo* review to constitutional question raised by rule itself as well as its application).

Accordingly, the Court concludes that it must approach Plaintiff's administrative appeal by reviewing WIAA's eligibility determination under the "arbitrary, capricious, or contrary to law" standard. However, to the extent that such review implicates consideration of Plaintiff's ADA and § 1983 claims on their merits, *de novo* review is required. Furthermore, the Supreme Court of Washington has found that "agency action that is in violation of a statute is, by definition, arbitrary and capricious, or contrary to law." *Skamania County v. Columbia River Gorge Comm'n*, 26 P.3d 241, 254 (Wash. 2001).

ORDER – 14

1   Accordingly, if WIAA's action violates either the ADA or § 1983, such action is, as a matter of law,

2   arbitrary, capricious, or contrary to law.

3          Where "arbitrary, capricious, or contrary to law" review is warranted, the Supreme Court of

4   Washington "has defined arbitrary or capricious agency action as action that is willful and unreasoning

5   and taken without regard to the attending facts or circumstances. . . .  Where there is room for two

6   opinions, and the agency acted honestly and upon due consideration, this court should not find that an

7   action was arbitrary and capricious, even though this court may have reached the opposite conclusion."

8   *Port of Seattle v. Pollution Control Hearings Bd.*, 90 P.3d 659, 670 (Wash. 2004) (internal quotations

9   and citations omitted).

10         **C.     APPEAL OF WIAA'S 2005 ELIGIBILITY DETERMINATION**

11                **1.     The 4-year "Season Limitation" Rule Appeal**

12         One of Plaintiff's contentions is that WIAA's determination that he played—or had the

13  opportunity to play—for four consecutive years was arbitrary and capricious because WIAA included the

14  season during which Plaintiff lived in Utah as one of his four years, in the face of overwhelming evidence

15  that he was ineligible in Utah and that he did not play for the Olympus football team.

16         Setting aside for a moment the facts about whether Plaintiff was eligible to play in Utah, the first

17  question as to Plaintiff's time in Utah is whether WIAA has made a tenable assertion that it can measure

18  "eligibility" in the way that it has.  Before the Court can address WIAA's factfinding and application of

19  those facts to its rules, it must first consider WIAA's underlying approach to the rule text.  For the

20  following reasons, the Court finds that WIAA's interpretation of its rules' use of the terms "eligibility"

21  and "opportunity" violates those very rules.

22         WIAA's "season limitation" rule states that "[f]or the purpose of interpreting [the season

23  limitation] rule, *interscholastic eligibility shall mean that the opportunity to participate in sports exists*

24  *for a maximum of . . . four (4) consecutive academic years after entering or being eligible to enter the*

25  *ninth grade.*"  (WIAA Handbook § 18.14.0 (emphasis added).)  The rule further states that "[a]pplication

26  ORDER – 15

of this rule shall not be determined by years of participation in individual sports or sport seasons." *Id.* Clearly, then, if one is *eligible* (*i.e.*, has the "opportunity to participate") but does not actually play, that year still "counts." What happens when one is *in*eligible, however, is the subject of the following analysis.

The rule quoted above states clearly that "eligibility" means "opportunity" to participate in sports. Despite this definition drawn straight from the face of WIAA's own rules, in order to apply the four-year rule in the way that it did in this case, WIAA had to contort "opportunity" in such a way as to render the term devoid of its obvious meaning. WIAA now contends that "opportunity" is measured by years of *possible* participation or *possible* eligibility. Taken to its logical conclusion, if "eligibility" means "opportunity" (as written in the rules) and "opportunity" means "possible eligibility" (as argued by WIAA), WIAA's argument is that "eligibility" as used in the rules really means "possible eligibility." Whether there is *actually* any opportunity to play is not part of the equation. This semantic trick renders Plaintiff's actual eligibility status in Utah irrelevant. "Opportunity" is used in WIAA rules as if it has meaning, yet WIAA had no regard for actual opportunity when it interpreted "eligibility" in Plaintiff's case.

WIAA's new definitions contravene the rules as written. Nowhere do WIAA's own rules justify such an interpretation. Instead, the rules state that "[a]dditional eligibility shall not be granted if the student has had . . . four (4) consecutive years of interscholastic *eligibility* after entering or being eligible to enter the ninth grade." *Id.* § 18.14.3 (emphasis added). The plain language of the rules shows that "opportunity" *does* mean actual opportunity—*i.e.*, "eligibility." If Plaintiff was *in*eligible in Utah, he did *not* have an opportunity to participate in sports. WIAA's contention to the contrary is untenable, and application of such a hyper-hypothetical interpretation of the word "opportunity" is arbitrary and capricious. Eligibility simply cannot include ineligibility.

Still, WIAA's position indicates now, as it did during the hearing, that there ought to be some kind of exception to the above—*i.e.*, that even if eligibility must mean actual eligibility, there should be a

ORDER – 16

way to *count* ineligibility as eligibility in some circumstances. WIAA asserts that Plaintiff "chose" to move to Utah, and, if he was ineligible to play there, it was his own fault. Based on this logic—disregarding whether Plaintiff was eligible or not—WIAA pronounced that it would *consider* him to have been eligible, because any actual ineligibility was of his own doing. WIAA's position is that it simply does not care whether Plaintiff was eligible or not that year in Utah.

Notably, this pronouncement was made *during* the hearing itself. (Def. WIAA's Mot., Olson Decl. Ex. G (September 13, 2005 Transcript) 9 ("It was your choice to live in Utah." (statement made by hearing officer Donald Bagnall).) It was also made in WIAA's ruling (Def. BSD's Mot., Blakney Decl. Ex. 2 (WIAA Eligibility Determination, September 26, 2005) ¶ 9 ("If [Plaintiff] was not eligible to participate at Olympus as stated on Form 5, it was because of his suspension from Kennedy High School. It was William's behavior that led to the subsequent need to transfer to Utah."); *id.* ¶ 13 ("[Plaintiff] has *had the opportunity* to participate, but through his own actions was unable to do so. According to WIAA Article 18.22.1A, circumstances that are a result of the acts or actions of the student or his family unit cannot be used to establish a *hardship* condition.") (emphasis added).)

These conclusions in WIAA's ruling are telling. WIAA first conceded that Plaintiff might not have been eligible in Utah, but then said that this did not matter because it was his own fault—a "justification" actually found in the rules regarding hardship exceptions,[7] not season limitations. WIAA thus used the *hardship* rule to justify its conclusion at the threshold step of counting years of eligibility. Yet, counting years of eligibility should be completed *before* consideration of whether an exception should apply. WIAA's obvious conflation of the *hardship* rule with the initial calculation of years the student was eligible is a clear misinterpretation of the rules. The Court cannot find WIAA's spontaneous construction of an "it's your own fault" exception to the clear language of the *season limitations* rule

---

[7] The hardship rule states that *additional* eligibility will not be granted if circumstances precipitating the request "result of acts or actions by the student or family unit." (WIAA Handbook § 18.22.1(A).)

ORDER – 17

anything but arbitrary, capricious, and contrary to WIAA's own rules.

Moving on to the question of *whether* Plaintiff was eligible in Utah, the Court finds here too that WIAA acted in utter disregard of the evidence before it, and that the findings of fact that were *applied* to the season limitations rule were arbitrary and capricious as well.  WIAA asserts in its motion that Plaintiff did play football in Utah (Def. WIAA's Mot. 18), but cites only its findings of September 26, 2005 that, at most, indicate conflicting evidence on this point.  Indeed, the only *evidence* on the matter consists of Mr. Walker's and Plaintiff's declarations that he did *not* play football in Utah, the forms submitted by the school in Utah indicating the same, and unclear testimony in the *2004* WIAA hearings.

As to documentary evidence, three different versions of the same form originated from the Utah school.  Two turned out to be forgeries and the third, apparently authentic, indicates that Plaintiff was *ineligible to play football while in Utah*.  (Pl.'s Opp'n to BSD, Degan Decl. Ex. D (Form 5, October 26, 2004) (indicating Plaintiff's ineligibility to play at Olympus High School); Def. WIAA's Reply, Olson Supp. Decl. Ex. B (Form 5, September 24, 2004) (apparently a forgery indicating that Plaintiff played junior varsity football); *id.* Ex. C (Form 5, October 12, 2004) (apparently a second forgery indicating that Plaintiff did not participate in sports due to ineligibility).)  Both Plaintiff and Mr. Walker submitted statements to WIAA indicating that they had no idea where the forgeries came from and did not procure them knowingly.  (Pl.'s Opp'n to WIAA, Degan Decl. Ex. F (statements dated October 26, 2004).)  No one at the time challenged these assertions.  In its Reply, WIAA emphasizes that even if the documents suggesting football participation in Utah were forgeries, they were submitted to WIAA by Plaintiff and Mr. Walker.  Regardless, the Court finds that known forgeries could *not* constitute credible evidence on this point, and WIAA's consideration of known forged documents to support a position that directly contradicted the evidence supplied by the known *authentic* version of the same document was an abuse of discretion.

Moreover, as to testimonial evidence, there is some lack of clarity.  However, the source of the testimony provides context for the apparent conflict.  First, At the *September 2004* administrative hearing

ORDER – 18

about the transfer rule (which had nothing to do with the season limitations determination made in September 2005), Plaintiff testified that he "played football but wasn't eligible" and Mr. Walker testified that Plaintiff "didn't play at the varsity level." (Def. WIAA's Mot., Olson Decl. Ex. K (September 24, 2004 Transcript) 7.) In the same hearing, Mr. Walker later said that Plaintiff "played a couple of games" at the "junior varsity" level. (*Id.* at 33.) This testimony was taken in 2004, as WIAA was considering whether the *transfer* rule would be waived for the 2004 season. Such is not the subject of the instant appeal. Conversely, the subject of the instant appeal was not *at issue* during the 2004 hearing. Therefore, there was no reason to clarify testimony or probe the issue further.

Furthermore, given later testimony on this point, the seeming ambiguities of the 2004 testimony become insignificant. Indeed, in 2005, the administrative record testimony by Plaintiff is that he merely practiced with the team because of the transfer rule that did not allow him to play. (*Id.* Ex. F (September 1, 2005 Transcript) 7–8.) Then, at the September 13, 2005 appeal hearing, football participation in Utah came up again. Plaintiff testified that he "did not participate in any football" in Utah because he "was ineligible" because he "didn't move with [his] parent." (*Id.* Ex. G (September 13, 2005 Transcript) 23.) In response, the hearing officer said "they must have a rule similar to ours" regarding transfers. (*Id.*) Plaintiff confirmed that he just "sat on the sidelines." (*Id.*) Later at the hearing, counsel addressed the matter further, specifically discussing the multiple versions of "Form 5" that had been produced. Plaintiff then said that the school in Utah "didn't have a sophomore team. They didn't even have—JV was like scrimmage. Like scrimmaging against varsity like during practice. Is that the same as JV? . . . There was no like game like I like—I really played." (*Id.* at 45–46.) Apparently, then, the participation in Utah amounted to practicing with the team despite the "junior varsity" reference in 2004 testimony. Nevertheless, WIAA insisted in 2005, as it does now, that Plaintiff used up one of his years of eligibility in Utah by focusing on the statements made in the 2004 hearings, not the 2005 hearings.

Because the four-year rule was not even at issue in 2004 and because all evidence before WIAA in 2005 consistently showed that Plaintiff did *not* play football in Utah, WIAA's decision to the contrary

ORDER – 19

was in disregard of the facts and evidence.  Reliance on vague testimony from a separate proceeding in 2004, which neither side attempted to clarify precisely because the subject of that testimony was not the focus of those hearings—was an abuse of discretion.

Finally, rather than objectively approaching the issue when it was actually before WIAA, the record reveals that WIAA predetermined the season limitation issue a year before it was raised.[8]  Such is clear from WIAA's statements in the 2004 administrative record and—most notably—its *sua sponte conclusion* in its 2004 ruling on the transfer rule that "[d]ue to his four years of participation, William will not be eligible for a fifth year of interscholastic participation should he enroll for the 2005–06 school year." " (Def. BSD's Mot., Blakney Decl. Ex. 15 (WIAA Eligibility Determination, September 30, 2004) ¶ 13.)  Unwilling to reconsider its prior premature determination even in the face of strong evidence to the contrary, WIAA abused its discretion and acted arbitrarily and capriciously in finding Plaintiff ineligible under the season limitation rule after determining that he had "used up" his four years of eligibility.

For the foregoing reasons, the Court finds that the season limitation rule was both misinterpreted and misapplied to such a degree that WIAA's action was arbitrary, capricious, and contrary to law. Plaintiff should not have been denied WIAA eligibility for the 2005–06 school year and 2005 football season.

## 2.    The Hardship Waiver Appeal

Because the Court has found that Plaintiff was eligible to play his fourth year of football in 2005–06, and that he had not by then used up all four years of eligibility, it follows that Plaintiff did not *need* a hardship waiver to the season limitation rule.  Nevertheless, the Court will briefly address WIAA's hardship waiver determination in the alternative, because the waiver was at issue below.  Therefore,

---

[8]  In keeping with its interpretive practices, perhaps WIAA regards administrative hearings as "opportunities" to decide both (1) issues that are actually before it and (2) issues that could possibly be before it.

ORDER – 20

assuming, for the purposes of this discussion only, that Plaintiff had used up his four years of football eligibility and that he would have needed a hardship waiver to participate in 2005–06, the Court makes the following findings regarding the WIAA hardship exemption and WIAA's findings in this case.

The WIAA's hardship waiver rule states that a waiver of eligibility regulations will be granted in cases of "extenuating circumstances, beyond the student's, or where applicable, the parents' or legal guardian's control, that are deemed to have significantly influenced or contributed to the cause of the student's non-compliance to the eligibility regulation(s) involved." (WIAA Handbook § 18.22.1.)  The rule further states that a "hardship exists only when some unique circumstances concerning the student's physical or emotional status exist and only when such circumstances are not the result of acts or actions by the student or family unit." (*Id.* § 18.22.1(A).)  Moreover, the "circumstances must be totally different from those that exist for the majority or even a small minority of students." (*Id.* § 18.22.1(B).) "There must be no reason to believe that the decision and/or the execution of the decision concerning the student's academic status was for athletic purposes." (*Id.* § 18.22.1(C).)  The rule also explicitly states the following limitations to the hardship exception:

    A.    Loss of eligibility in itself or an injury in itself that prevents the student from exercising an opportunity to participate are not to be considered hardships.  In addition, attending a school that does not offer interscholastic activities is not to be considered a hardship . . . .  To grant additional eligibility based on a hardship, a student must demonstrate that normal progression towards graduation has been significantly interrupted as a result of either a long-confining illness, an injury, a family hardship, and that the interruption prevented the student from graduating in four (4) consecutive years.

    B.    A hardship exception shall not be granted if there is sufficient evidence to make it reasonable to believe that the non-compliance to the eligibility rule in question was motivated by the student's, parents['] or school's efforts to gain a desired athletic outcome or to intentionally circumvent a rule, or

    C.    A hardship exception shall not be granted if the student has had the opportunity for . . . four (4) consecutive years after entering or being eligible to enter the ninth grade to participate in interscholastic activities.

(*Id.* § 18.22.2.)

//

ORDER – 21

Plaintiff claimed a hardship based on his family situation and relocations, his ADHD and learning disability, and his allegedly resultant poor academic performance. WIAA found that the disability claim was "unsubstantiated" because Plaintiff had received better grades at times before he was diagnosed and receiving services than after those services were initiated. (Def. BSD's Mot., Blakney Decl. Ex. 15 (WIAA Eligibility Determination, September 30, 2004) ¶ 10.) WIAA also concluded that suspensions and truancy caused Plaintiff's inability to graduate within four years, going so far as to conclude that *but for* his failure to maintain continuous enrollment at one school, Plaintiff would have graduated without needing a fifth year of high school. (*Id.* ¶¶ 10–11.) The Court finds that these conclusions are unsupported by the evidence.

First, lack of continuous enrollment at one school clearly was not due to Plaintiff's unilateral "decisions." Rather, family difficulties played a significant role in Plaintiff's life during high school, beginning with the summer before his sophomore year when his brother died. Moreover, regardless of the *reason* he was expelled from his family home (which is disputed), the fact remains that he *was* expelled from his family home at the age of 16. He could not return. WIAA's own rules specifically list family hardship as cause for a waiver. WIAA's discounting of Plaintiff's family-based traumas was completely unsupported by the evidence. WIAA did not simply conclude that Plaintiff's family situation was one of several causes for his failure to graduate or that it was not significant enough. Instead, WIAA specifically concluded that Plaintiff was *solely* responsible for his own failure to graduate in five years—including, apparently, his brother's death and his expulsion from the family home.

Second, the Court acknowledges that nonattendance, truancy, behavioral problems leading to suspension, and other factors were legitimate considerations when determining why Plaintiff needed more than four years to graduate. However, WIAA's dismissive approach to Plaintiff's *documented* ADHD and learning disability entitling him to special education services was arbitrary and capricious, particularly because they may have *caused* some of these other problems.

//

ORDER – 22

1    Third, it is clear from the record that WIAA considered evidence that was totally irrelevant to the

2    issue before it (eligibility and a waiver under WIAA rules) when it considered the letter submitted by

3    BSD regarding Plaintiff's "cheating" violations.  (*See* Def. WIAA's Mot., Olson Decl. Ex. G (September

4    13, 2005 Transcript) 34–36; Pl.'s Opp'n to WIAA, Degan Decl. Ex. K (letter from Bellevue High School

5    Principal Michael Bacigalupi).)  These alleged violations of one school's policy are particularly irrelevant,

6    because, even if Plaintiff would not be able to participate in sports *at Bellevue High School*, he still would

7    have been able to participate at another BSD school if he was deemed eligible for the season by WIAA.

8    WIAA's consideration of this evidence could only have had the effect of diminishing the importance of

9    WIAA eligibility by suggesting that it did not matter what WIAA decided because Plaintiff could not play

10   anyway.  Accordingly, WIAA's consideration of this irrelevant evidence was a further abuse of discretion.

11   For the foregoing reasons, the Court finds that WIAA's determination that Plaintiff could not

12   qualify for a hardship waiver under the policy as written was arbitrary and capricious.  Moreover, to the

13   extent that this decision may also constitute a violation of the ADA, as discussed *infra*, there exists at

14   least a question of fact as to the *cause* of Plaintiff's poor academic performance, low grades, and inability

15   to graduate in four years.  Therefore, the Court finds that, even if the waiver decision had not constituted

16   arbitrary and capricious conduct, the ADHD and learning-disability dimensions of Plaintiff's waiver claim

17   warrant *de novo* review because of their ADA implications.  Further, if an ADA violation is found,

18   WIAA's decision will be rendered "arbitrary, capricious, and contrary to law" *by definition*, irrespective

19   of the otherwise arbitrary and capricious nature of WIAA's decision found herein.  Finally, the Court

20   again notes that, only as an alternative to the Court's ruling *supra*—finding WIAA's interpretation and

21   application of the season limitation rule arbitrary, capricious, and contrary to law—does the Court further

22   find that the application of the hardship waiver rule was also arbitrary and capricious.  However, these

23   findings regarding the application of the hardship waiver do provide additional support for the Court's

24   ruling *supra* that Plaintiff should not have been denied WIAA eligibility for the 2005–06 school year and

25   2005 football season, *regardless* of any later finding of an ADA violation.

26   ORDER – 23

1    **D.    ADA CLAIMS**

2         Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such

3    disability, be excluded from participation in or be denied the benefits of the services, programs, or

4    activities of a public entity,[9] or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

5         To prove a public program or service violates Title II of the ADA, a plaintiff must show:
      (1) he is a "qualified individual with a disability"; (2) he was either excluded from

6         participation in or denied the benefits of a public entity's services, programs or activities,
      or was otherwise discriminated against by the public entity; and (3) *such exclusion, denial*

7      *of benefits, or discrimination was by reason of his disability.*

8    *Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997), *cert. denied*,

9    522 U.S. 971 (1997) (emphasis in original).  In addition to prohibiting intentional discrimination, the

10   Ninth Circuit has found that § 12132 prohibits discrimination resulting from facially neutral laws that

11   nevertheless "den[y] meaningful access to state services." *Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir.

12   1996).

13        When a state's policies, practices or procedures discriminate against the disabled in
      violation of the ADA, Department of Justice regulations require reasonable modifications

14        in such policies, practices or procedures "when the modifications are necessary to avoid
      discrimination on the basis of disability, unless the public entity can demonstrate that

15        making the modifications would fundamentally alter the nature of the service, program, or
      activity."

16
     *Id.* (quoting 28 C.F.R. § 35.130(b)(7)); *see also Lovell v. Chandler*, 303 F.3d 1039, 1054 (9th Cir. 2002)

17
     (emphasizing that the "fundamentally alter" test applies in cases of disparate impact).

18   //

19   //

20

_____

21        [9]  There does not appear to be any dispute that WIAA constitutes a "public entity," even though it

22   is a "voluntary nonprofit entity."  The authority vested in WIAA clearly is delegated from the school
     districts, which are themselves public entities.  Further, Washington courts have treated WIAA as a public

23   entity. *See Fusato*, 970 P.2d at 766–71 (evaluating WIAA's violation of the Equal Protection Clause of
     the Fourteenth Amendment).  Accordingly, the Court finds that WIAA constitutes a "public entity" for

24   purposes the ADA, as well as a "state actor" for purposes of Plaintiff's § 1983 claims.  Similarly, BSD is
     a "public entity" for purposes of the ADA, as well as a "state actor" for purposes of Plaintiff's § 1983

25   claims.  BSD's Eleventh Amendment argument is addressed *infra* subsection II.D.3.i.

26   ORDER – 24

### 1.    Individual with a Disability Under the ADA

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," "a record of such an impairment," or "being regarded as having such an impairment."  42 U.S.C. § 12102(2).  Learning is a major life activity.  29 C.F.R. § 1630.2(i).  Neither Defendant argues that Plaintiff is not an individual with a disability for purposes of the ADA.  The record is clear that he has both ADHD and a learning disability that entitles him to special education services under the Individuals with Disabilities Education Act (IDEA).  Plaintiff was diagnosed with ADHD in December 2004.  However, his learning disability was initially addressed much earlier.  The Highline School District first identified Plaintiff for special education services in preschool.  It appears that Plaintiff received some level of services at Kennedy High School as well.  However, Bellevue High School evaluated Plaintiff for a specific learning disability for the first time in May 2005, finding him eligible for an IEP.  The Court finds that Plaintiff meets the threshold status of an individual with a disability under the ADA.  Accordingly, the remaining accommodation-claim[10] elements as to each Defendant will include (1) whether Plaintiff is "otherwise qualified" for the program or service he seeks and (2) whether Defendants can make "reasonable modifications" to accommodate Plaintiff's disability.  *Wong v. Regents of University of California*, 192 F.3d 807, 816–17 (9th Cir. 1999) (discussing burdens of proof under the ADA); *Bingham*, 37 F. Supp. 2d at 1192 (setting forth elements of an ADA claim in high-school athletic context).  Expressed in terms of how these two elements interrelate, a "qualified individual with a disability" is

> an individual with a disability who, with or without *reasonable modifications* to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the *essential* eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

---

[10]  In addition to the accommodation claims against both Defendants, Plaintiff has a separate IDEA "child-find" claim against BSD.  The elements of that claim are discussed separately *infra* subsection II.D.3.ii.

ORDER – 25

1    42 U.S.C. § 12131(2) (emphasis added).  The Court now turns to the Plaintiff's ADA claims against each

2    Defendant.

3                    **2.    ADA Claims Against WIAA**

4              WIAA appears to argue that because there is no evidence of intentional discrimination, its rules

5    and their application could not possibly violate the ADA.  (Def. WIAA's Mot. 18.)  Such a contention is

6    meritless, because intentional discrimination is not required.  WIAA's nondiscriminatory application of its

7    rules, even if not arbitrary and capricious, may still violate the ADA if the rules themselves violate the

8    ADA.  Conversely, if the rules themselves do not violate the ADA, their application may do so in any

9    event.

10                    **i.    WIAA's Rules**

11             Plaintiff argues that the hardship exception rule, quoted *supra* subsection II.C.2, with its

12   requirement that a student must show that "normal progression towards graduation has been significantly

13   interrupted as a result of either a *long-confining illness, an injury, a family hardship*, and that the

14   interruption prevented the student from graduating in four (4) consecutive years" violates the ADA

15   because it does not allow learning disabled students a waiver if they cannot meet this strictly-worded

16   definition of a hardship.  Further, Plaintiff argues that the additional clause that prohibits a hardship

17   exception "if the student has had the opportunity for . . . four (4) consecutive years after entering or being

18   eligible to enter the ninth grade to participate in interscholastic activities" further precludes a student with

19   a disability from participation if he or she has been eligible to participate in interscholastic activities

20   during four years but will need a fifth year to graduate.  Plaintiff relies heavily on *Bingham v. Oregon*

21   *School Activities Ass'n*, 37 F. Supp. 1189, in challenging the validity of the hardship exception rule.

22   WIAA does not even address the validity of these rules in its summary judgment briefing, instead

23   focusing on whether the accommodation Plaintiff sought in having the hardship rule applied was

24   reasonable.

25   *//*

26   ORDER – 26

1    In *Bingham*, the district court found that the season limitation rule promulgated by the Oregon

2    School Activities Association (the Oregon equivalent of WIAA) violated the ADA because, while the set

3    of eligibility rules carved out disability-based exceptions to the attendance and grade policy as well as to

4    the age-limitation rule, Oregon's rules did not include a similar exception to the season limitation policy

5    (8 semesters) for students with disabilities.  37 F. Supp. 2d at 1202, 1205.  As to the elements of an ADA

6    claim, the *Bingham* court found that the semester-limitation rule, as drafted, probably could not be

7    considered an "essential" rule of eligibility because it did not include a disability-based exception

8    provision.  *Id.*  However, the *Bingham* court's ultimate ruling was that the Plaintiff there had

9    "overwhelmingly established that a waiver of the eight semester rule under the circumstances of his case

10   is a reasonable modification to accommodate his learning disability," regardless of whether the semester

11   limitation was "essential."  *Id.*  The court further ordered the athletic association to rewrite its eligibility

12   rules to cure the lack of a disability-based exception to the semester limitation rule, among other things.

13   *Id.* at 1205.

14   The primary difference between the rules at issue in *Bingham* and those at issue here is that, in

15   *Bingham*, the rules allowed for disability exceptions in some circumstances (*e.g.*, age, grades) but not in

16   others (*e.g.*, semesters of play).  Here, however, WIAA's rules are structured in such a way as to provide

17   one general "hardship waiver" provision that applies to all of its eligibility rules.  Where the Oregon rules

18   each had separate exception provisions, WIAA's rules are all governed by one general exception

19   provision.  Accordingly, this Court cannot compare exceptions to some rules with exceptions to other

20   rules as the *Bingham* court did.  Instead, the issue here is whether WIAA's general exception provision is

21   adequate as applied to various eligibility rules, and in particular, as applied to the season limitation rule.

22   The Court is inclined to agree with Plaintiff, based on the reasoning of *Bingham*, that the hardship

23   rule, as written, violates the ADA.  Specifically, if a learning disability does not amount to a "long-

24   confining illness" or "injury," there appears to be no room for a learning-disabled student to obtain a

25   hardship waiver under the rule as drafted.  Rather than making such a finding now, however, the Court

26   ORDER – 27

will instead defer a ruling on the validity of the rule until such time as other relevant issues have been determined. Because the issues of whether Plaintiff is otherwise "qualified" and whether the Plaintiff's requested accommodation is "reasonable" involve questions of fact, the Court cannot presently rule on the threshold issue of whether the four-year rule is an "essential" rule of eligibility as presently drafted. Indeed, such a ruling may not be necessary, as in *Bingham*, and the Court declines to make any findings in that regard until the record is more fully developed. What is clear at this point is that Plaintiff is entitled to present evidence going to the yet-unresolved elements of his ADA claim against WIAA. Because Plaintiff has raised material issues of fact, WIAA is not entitled to summary judgment on the issue of whether its rules as written violate the ADA.

### ii.   Application of WIAA's Rules

Alternatively, even if WIAA rules, as drafted, could be construed to allow reasonable accommodations for disabled students without requiring them to be rewritten, WIAA's *application* of these rules to Plaintiff may have violated the ADA in any event. As with the validity of the rules and possible modifications thereto, the Court finds that there remain significant questions of fact going to the issue of how WIAA rules were applied in this case. Plaintiff is entitled to present evidence, including expert witness testimony, to support his claim that his disability was the cause of his low grades, poor academic performance, truancy, and other behavioral problems to a degree sufficient to warrant the accommodation he seeks. Accordingly WIAA is not entitled to summary judgment on the question of whether its application of the hardship exception violates the ADA. The cause of Plaintiff's academic performance over the course of his high school career is a question for the finder of fact.

### 3.   ADA Claim Against BSD

In light of the Court's findings *supra* that WIAA eligibility should have been extended to Plaintiff in the 2005–06 season, the Court notes that whether he can play football at Bellevue High School is a separate matter. To be able to play at Bellevue High School, Plaintiff must show that he can meet additional eligibility requirements (or could have in 2005–06), or alternatively, that his failure to meet

ORDER – 28

1    such eligibility requirements was a result of his disability.  If Plaintiff can prove that he was "otherwise

2    qualified" to play at a BSD school and that he is requesting a reasonable accommodation of his disability

3    to mitigate its effects on his eligibility, he may entitled to play for a BSD school in 2006–07.  Further, if

4    BSD violated the ADA child-find requirement and, as a result, Plaintiff should have been eligible to play

5    football at a BSD school in 2005–06, such a finding will impact where he may play in the 2006–07 school

6    year.  The Court now turns to these ADA claims against BSD.

7                          **i.      Eleventh Amendment Immunity[11]**

8            BSD claims that it is protected from suit based on Eleventh Amendment immunity.  The Eleventh

9    Amendment bars suits against states and their agencies in federal court unless the state consents.  *Yakama*

10   *Indian Nation v. State of Wash. Dept. of Revenue*, 176 F.3d 1241, 1245 (9th Cir. 1999).  However,

11   "protection from suit under the Eleventh Amendment 'does not extend to counties and municipal

12   corporations.'"  *Holz v. Nenana City Public School Dist.*, 347 F.3d 1176, 1180 (9th Cir. 2003) (finding

13   that Alaska's school districts are not immune from suit) (quoting *Eason v. Clark County School Dist.*,

14   303 F.3d 1137, 1141 (9th Cir. 2002); citing *Lake County Estates, Inc. v. Tahoe Reg'l Planning Agency*,

15   440 U.S. 391, 400–01 (1979)).  Therefore, the issue before this Court is "'whether the [School District]

16   is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is

17   instead to be treated as a municipal corporation or other political subdivision to which the Eleventh

18   Amendment does not extend.'"  *Id.* (quoting *Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S.

19   274, 280 (1977) (holding that an Ohio school district is more like a county or city than it is like an arm of

20   the state and therefore it is not entitled to assert Eleventh Amendment immunity from suit) (parenthetical

21   by *Holz* court)).  As noted by the Ninth Circuit, "most courts have held that school districts are not

22   entitled to Eleventh Amendment immunity." *Id.* at 1181 n.4.

23   _____

24          [11]  The analysis here applies with equal force to any claim of Eleventh Amendment immunity as to
     Plaintiff's § 1983 due process claim against BSD, even though BSD did not specifically raise that issue
25   when moving for summary judgment to dismiss Plaintiff's § 1983 due process claim.

26   ORDER – 29

In *Mitchell v. Los Angeles*, 861 F.2d 198, 201 (9th Cir. 1989), the Ninth Circuit articulated a five-factor test to determine whether a "governmental agency is an arm of the state." They are (1) "whether a money judgment would be satisfied out of state funds," (2) "whether the entity performs central governmental functions," (3) "whether the entity may sue or be sued," (4) "whether the entity has the power to take property in its own name or only the name of the state," and (5) "the corporate status of the entity." *Id.* at 201. The first of these factors is the most important. *Id.* at 1182.

In applying the *Mitchell* factors to other states, the Ninth Circuit has found the school districts in Nevada, Arizona, and Alaska, for example, *not* to be arms of the state and therefore *not* entitled to Eleventh Amendment immunity. *Holz*, 347 F.3d 1176 (Alaska); *Savage v. Glendale Union High Sch.*, 343 F.3d 1036 (9th Cir. 2003) (Arizona); *Eason*, 303 F.3d 1137 (Nevada). The State of California's school districts, however, have been found to be uniquely state-like in this regard, and *are* entitled to Eleventh Amendment immunity. *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248 (9th Cir. 1992).

BSD argues that Washington is more like California than it is like those states where the school districts are not entitled to Eleventh Amendment immunity. BSD, however does not apply the *Mitchell* factors and does not otherwise support its conclusion. Nor does BSD point to any authority that indicates that Washington state funds would be used to pay a judgment against BSD, thus failing to address the most important *Mitchell* factor. BSD fails to liken Washington to California sufficiently for this Court to find that Washington is among the exceptional cases rather than among the majority of states. In contrast, Plaintiff discusses the funding system in Washington and how it differs from that in California (*e.g.*, a local levy is used in Washington whereas state and local funds are commingled in California); points out that Washington school districts are public corporations by statute (*see* WASH. REV. CODE § 28A.320.010); and provides statutory support for the school boards' control over school property (*see id.* §§ 28A.335.090, 28A.335.010, 28A.335.040–090). Because application of the *Mitchell* factors precludes a finding that Washington school districts are "arms of the state," the Court finds that BSD is not entitled to Eleventh Amendment immunity

ORDER – 30

1

**ii.      Child-Find Claim and Exhaustion Defense**

2       Plaintiff's first ADA claim against BSD depends on whether BSD violated the IDEA "child-find"

3   requirement.  20 U.S.C. § 1412(a)(3).  This requirement is designed to ensure that children with

4   disabilities are "identified, located, and evaluated and a practical method is developed and implemented to

5   determine which children with disabilities are currently receiving needed special education and related

6   services."  *Id.*  The child-find duty is "triggered when the [state or local educational agency] has reason to

7   suspect a disability, and reason to suspect that special education services may be needed to address that

8   disability."  *Dep't of Educ., State of Hawaii v. Cari Rae S.*, 158 F. Supp. 2d 1190 (D. Hawaii 2001)

9   (internal quotations omitted).

10      BSD is correct that Plaintiff cannot pursue his child-find claim if he did not exhaust his

11  administrative remedies, specifically provided by the IDEA.  *Robb v. Bethel School Dist. #??403*, 308

12  F.3d 1047 (9th Cir. 2002).  It is undisputed that Plaintiff did not pursue these administrative remedies.

13  However, there are limited exceptions to the IDEA's exhaustion requirement, particularly where

14  exhaustion would be "futile."  *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1302–03 (9th Cir.

15  1992).  Only if Plaintiff can prove that he is entitled to an exception to the exhaustion requirement may

16  this Court adjudicate his child-find claim.

17      Because Plaintiff's "futility" argument is fact-intensive, and because BSD has not foreclosed these

18  factual contentions in its briefing, the Court finds that Plaintiff has raised a material issue of fact as to his

19  reason for not pursuing his administrative remedies in this case before filing suit.  Accordingly, BSD is

20  not entitled to summary judgment on the exhaustion defense.  Further, the merits of Plaintiff's child-find

21  claim involve material issues of fact that cannot be resolved on summary judgment in any event.  Plaintiff

22  may pursue his child-find claim against BSD at trial if he can provide a factual basis sufficient to rebut

23  BSD's exhaustion defense.  If Plaintiff was not required to exhaust his administrative remedies due to

24  futility, he has raised a genuine issue of fact as to BSD's adherence to the child-find duty.

25

26  ORDER – 31

1              **iii.**     **Reasonable Accommodation**

2         Even if BSD did not violate the child-find duty with respect to Plaintiff, Plaintiff has made an

3 additional claim that BSD's application of its own rules of eligibility (as well as those of Bellevue High

4 School) violates the ADA.  BSD argues that even if Plaintiff should have been eligible under WIAA rules

5 for the 2005–06 season, he could not have played football for Bellevue High school that year for two

6 reasons: alleged cheating policy violations and low grades.  BSD argues that, although the cheating

7 violations are only enforced for one year (and thus would not prevent participation in 2006–07),

8 Plaintiff's grades remain too low for him to participate in Bellevue High School (or BSD) football next

9 year, regardless of any separate ruling that WIAA must allow him to play in 2006–07.

10         The Court finds that Plaintiff's reasonable accommodation claim against BSD cannot be dismissed

11 on summary judgment.  As with his ADA claims against WIAA, Plaintiff is entitled to present evidence,

12 including expert witness testimony, to support his claim that his disability was the cause of his low

13 grades, poor academic performance, truancy, and other behavioral problems to a degree sufficient to

14 warrant the accommodation he seeks.  The cause of Plaintiff's academic performance over the course of

15 his high school career is a question for the finder of fact.

16     **E.**     **§ 1983 CLAIMS**

17         To state a claim under § 1983, Plaintiff must establish (1) that he was "deprived of a right secured

18 by the Constitution or laws of the United States" and (2) that "the alleged deprivation was committed

19 under color of state law."  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).  The second

20 element clearly is satisfied in this case as to both Defendants.  *See supra* note 9.  Further, Eleventh

21 Amendment immunity does not protect either entity from suit.  *See supra subsection* II.D.3.i (resolving

22 question as to BSD; WIAA did not assert Eleventh Amendment immunity).  Therefore, only the first

23 element must be resolved as to Plaintiff's § 1983 claims against each Defendant.

24

25

26 ORDER – 32

1          **1.        § 1983 Claims Against WIAA[12]**

2                **i.        Equal Protection**

3          Plaintiff alleges that WIAA denied him equal protection in violation of § 1983.  An equal

4   protection claim by a person with a disability is subject to rational basis review.  *City of Cleburne, Tex. v.*

5   *Cleburne Living Center*, 473 U.S. 432, 446 (1985) (declining to make the disabled a quasi-suspect class).

6   Accordingly, the protection afforded by the Equal Protection Clause of the Fourteenth Amendment is less

7   than that afforded by the ADA.  *See Stevens v. Illinois Dept. of Transp.*, 210 F.3d 732, 738 (7th Cir.

8   2000).  Moreover, to make out a claim that WIAA has violated the Equal Protection Clause, Plaintiff

9   must show "purposeful discrimination."  *Batson v. Kentucky*, 476 U.S. 79, 93 (1986).  Such

10  discrimination may be proven by circumstantial evidence.  *Id.*  A § 1983 plaintiff "must plead intentional

11  unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory

12  intent" to support an equal protection claim.  *Monteiro v. Tempe Union High School Dist.*, 158 F.3d

13  1022, 1026 (9th Cir. 1998).  Here, Plaintiff has not alleged that WIAA has *intentionally* discriminated

14  against students with disabilities by promulgating its eligibility and hardship exception rules or by

15  applying those rules to his case.  Accordingly, even if WIAA's rules have a discriminatory impact on

16  students with disabilities and violate the ADA, Plaintiff has not made out a claim for a corresponding

17  equal protection violation.

18          In contrast to the standard of review applied to disability-based equal protection claims, strict

19  scrutiny is applied when a classification is suspect (*e.g.*, race, ethnicity) or burdens a "fundamental right."

20  *City of Cleburne*, 473 U.S. at 440 (discussing suspect classes); *San Antonio Indep. Sch. Dist. v.*

21  *Rodriguez*, 411 U.S. 1, 17, 31–32 (1973) (discussing fundamental rights).  However, the requirement to

22  plead intent is the same.  Plaintiff has not alleged that WIAA discriminated against him based on his race

23  or ethnicity.  Moreover, no "fundamental right" is involved here.  Education itself has failed to attain the

24  _____

25          [12] While the parties' pleadings and briefing conflate Plaintiff's equal protection and due process claims, the Court addresses each separately.

26  ORDER – 33

1    status of "fundamental right."  *San Antonia Indep. Sch. Dist.*, 411 U.S. 1.  Nor can this Court find any

2    authority that would demonstrate that participation in high school athletics is a federally-protected

3    fundamental right.  Indeed, Washington courts have recognized that there is no fundamental right to

4    engage in interscholastic sports.  *Darrin v. Gould*, 540 P.2d 882, 890 (Wash. 1975); *Fusato*, 970 P.2d at

5    778.  Furthermore, Plaintiff has failed to allege "purposeful discrimination" due to his membership in a

6    suspect class or burdening a fundamental right.  Plaintiff's equal protection claim against WIAA must be

7    dismissed.

8                          **ii.        Deprivation of Property Right Without Due Process**

9            Plaintiff's Fourteenth Amendment Due Process Clause claim is based on a purported property

10   interest in interscholastic athletics.  While education has not been deemed a "fundamental right" for

11   purposes of the Equal Protection Clause, the Supreme Court has held that a state may create a federally

12   protected property right in a public education, which right is subject to the protections of the Due

13   Process Clause.  *Goss v. Lopez*, 419 U.S. 565 (1975).  Deprivation of *educational* rights are not at issue

14   here.  Plaintiff claims that a right to play football was deprived without due process; he does not claim

15   that a right to attend school was deprived without due process.  Accordingly, *Goss* is not clearly

16   applicable to the present claim.

17           The Supreme Court has not addressed the question of whether participation in interscholastic

18   activities may constitute a protected property interest once granted by a state.  The federal courts that

19   have considered this general question have determined overwhelmingly that no such property right exists.

20   *See, e.g.*, *Davenport v. Randolph County Bd. of Educ.*, 730 F.2d 1395, 1397 (11th Cir. 1984); *Walsh v.*

21   *Louisiana High Sch. Athletic Ass'n*, 616 F.2d 152, 159 (5th Cir. 1980); *Angstadt v. Midd-West Sch.*

22   *Dist.*, 286 F. Supp. 2d 436, 441–43 (M.D. Penn. 2003); *Farver v. Bd. of Educ. of Carroll County*, 40 F.

23   Supp. 2d 323, 324–25 (D. Md. 1999); *Peterson v. Indep. Sch. Dist. No. 811*, 999 F. Supp. 665, 674 (D.

24   Minn. 1998); *James v. Tallassee High Sch.*, 907 F. Supp. 364, 366–67 (M.D. Ala. 1995), *aff'd*, 104 F.3d

25   372 (11th Cir. 1996); *Brands v. Sheldon Cmty. Sch.*, 671 F. Supp. 627, 631 (N.D. Iowa 1987);

26   ORDER – 34

*Haverkamp v. Unified Sch. Dist. No. 380*, 689 F. Supp. 1055, 1058 (D. Kan. 1986); *Paschal v. Perdue*, 320 F. Supp. 1274, 1276 (S.D. Fla. 1970).  Further, analysis by the Court of Appeals of Washington indicates that a *specific* statutory pronouncement of a right is necessary before federal constitutional due process will protect a Washington-created property right.  *Nieshe v. Concrete Sch. Dist.*, 127 P.3d 713, 720 (Wash. App. 2005) (finding "no Washington statute that expressly entitles students to a high school graduation ceremony" and declining to find a graduation ceremony to be an "extension of the property interest in a high school education and diploma").  Similarly, this Court can find no Washington statute that expressly enties students to interscholastic activity participation.  The Court is unconvinced that the state statute designating an appeal process for athletic eligibility determinations, *see* WASH. REV. CODE 28A.600.200, is sufficient.  Therefore, this Court adopts the majority view that there is no property right in interscholastic high school athletic participation.  Because due process does not apply, the Court does not reach the question of what process is due when athletic participation is prevented.  Plaintiff cannot maintain his due process claim against WIAA because he has not alleged deprivation of a recognized property interest.

### 2.     § 1983 Claims Against BSD

#### i.     Deprivation of Property Right Without Due Process

By enforcing Bellevue High School's "cheating" policy to declare him ineligible to play football in the 2005–06 season, Plaintiff alleges that Defendant BSD deprived him of a property right without affording him Fourteenth Amendment Due Process.  Again, the property right Plaintiff seeks to protect is in interscholastic athletic participation.  The analysis set forth in subsection II.E.1.ii applies with equal force here—Plaintiff cannot maintain a due process claim against BSD because he has not alleged deprivation of a recognized property interest.[13]

---

[13]  The Court notes that Plaintiff has *not* alleged that the cheating policy deprived him of an *educational* right without due process.  Accordingly, the Court expresses no opinion on whether the cheating policy or its enforcement could have due process implications where a recognized property right

**III.    CONCLUSION**

For the reasons set forth in this Order, the Court GRANTS IN PART and DENIES IN PART Defendant WIAA's and Defendant BSD's motions for summary judgment.

(1)    Defendant WIAA's motion for summary judgment is GRANTED IN PART and DENIED IN PART, as follows:

(a)    Appeal of Administrative Decision

(i)    WIAA's interpretation and application of its "season limitation" rule was arbitrary, capricious, and contrary to law;

(ii)    WIAA's application of its hardship waiver provision to Plaintiff's case was arbitrary, capricious, and contrary to law;

(iii)    WIAA's September 26, 2005 determination that Plaintiff was ineligible to participate in interscholastic athletics in the State of Washington for the 2005–06 school year is REVERSED;

(iv)    The Court will impose further relief and enter judgment as to a specific remedy as is appropriate and in accordance with the law at such later time in these proceedings as the parties may request; and

(v)    WIAA's motion to dismiss Plaintiff's administrative appeal is DENIED;

(b)    ADA Claims

(i)    Plaintiff has raised a genuine issue of material fact as to whether WIAA's hardship waiver provision, as written, violates the ADA;

(ii)    Plaintiff has raised a genuine issue of material fact as to whether WIAA's application of its hardship waiver provision to Plaintiff's case violated the ADA; and

---

is asserted.

ORDER – 36

1                       (iii)    WIAA's motion to dismiss Plaintiff's ADA claims is DENIED;

2           (c)     § 1983 Claims

3                       (i)     Plaintiff has failed to sufficiently allege purposeful discrimination as

4                             required to make out a § 1983 claim invoking the Fourteenth Amendment

5                             Equal Protection Clause;

6                       (ii)    Plaintiff has failed to sufficiently allege deprivation of a recognized

7                             property interest as required to make out a § 1983 claim invoking the

8                             Fourteenth Amendment Due Process Clause; and

9                       (iii)    WIAA's motion to dismiss Plaintiff's equal protection and due process

10                             § 1983 claims is GRANTED;

11     (2)     Defendant BSD's motion for summary judgment is GRANTED IN PART and DENIED

12           IN PART, as follows:

13           (a)     ADA Claims

14                       (i)     BSD is not entitled to Eleventh Amendment immunity;

15                       (ii)    Plaintiff has raised a genuine issue of material fact as to whether exhaustion

16                           of his administrative remedies, as required to maintain an IDEA claim, was

17                           not required due to the "futility" exception;

18                       (iii)    Plaintiff has raised a genuine issue of material fact as to whether BSD

19                           violated the child-find duty of the IDEA;

20                       (iv)    Plaintiff has raised a genuine issue of material fact as to whether separate

21                           eligibility requirements, as written and as applied to his case by BSD (and

22                           Bellevue High School), violate the ADA; and

23                       (v)     BSD's motion to dismiss Plaintiff's ADA claims is DENIED;

24           (b)     § 1983 Claim

25                       (i)     Plaintiff has failed to sufficiently allege deprivation of a recognized

26 ORDER – 37

property interest as required to make out a § 1983 claim invoking the

Fourteenth Amendment Due Process Clause; and

(iii)    BSD's motion to dismiss Plaintiff's due process § 1983 claim is

GRANTED.


SO ORDERED this 20th day of June, 2006.

John C. Coughenour
United States District Judge

ORDER – 38